IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| KARLA M. VASQUEZ, individually and as Parent, Next Friend, Natural and General Guardian of Aaron Vasquez,<br><br>  Plaintiffs,<br><br>v.<br><br>Pickens County; Pickens County Sheriff's Department; Rick Clark, Pickens County Sheriff; James William Trotter; Matt McGaha; Chief Deputy Chuck James; and Lieutenant Tommy Blankenship,<br><br>  Defendants. | CA No. 8:22-cv-02641-DCC-KFM<br><br>**DEFENDANTS PICKENS COUNTY; PICKENS COUNTY SHERIFF'S DEPARTMENT; RICK CLARK, PICKENS COUNTY SHERIFF; JAMES WILLIAM TROTTER; MATT MCGAHA; CHIEF DEPUTY CHUCK JAMES; AND LIEUTENANT TOMMY BLANKENSHIP'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT DR. MARC E. BROWN** |

COMES NOW, Defendants Pickens County, Pickens County Sheriff's Department, Rick Clark, Pickens County Sheriff, James William Trotter, Matt McGaha, Chief Deputy Chuck James, and Lieutenant Tommy Blankenship, (hereinafter "Defendants"), by and through their undersigned counsel, to hereby move this Court for an Order excluding of limiting the opinion testimony and report of Dr. Marc E. Brown (hereinafter "Brown"). Brown has been designated by Plaintiff Karla Vasquez, individually and as Parent, Next Friend, Natural and General Guardian of Aaron Vasquez (hereinafter "Vasquez") as an expert in police brutality. (See Vasquez's Expert Disclosure, attached as Exhibit 1). Brown should not be permitted to testify on this topic because his opinions are irrelevant to the facts of this case, do not meet the required indica of reliability, and would not assist the trier of fact in determining relevant facts in issue.

This is an abuse of force case against Trotter based upon an encounter between Trotter while serving in his capacity as a Pickens County Sheriff's Officer and Vasquez. Vasquez alleges causes of action for 42 U.S.C. §1983 Violations of 4th and 14th Amendment; 42 U.S.C. §1983 Due Process Violation due to Racism; 42 U.S.C. §12132, Title II of the American Disabilities Act Violation; Negligence and Gross Negligence-South Carolina Torts Claim Act (all Defendants except Trotter), and an Outrage/Intentional Infliction of Emotional Distress claims against Trotter under South Carolina law. This matter is before the District Court due to the Federal claims involved.

## FACTS OF CASE

On the morning of August 30, 2021, at 8:19 a.m., a concerned citizen called dispatch to report suspicious person, later confirmed to be Vasquez, walking down Pace Bridge Broad in Pickens County. (See, CAD Report attached as Exhibit 2). The caller states, "He was standing on the side of the road, currently he's in the middle of the road right now. He was playing with himself as cars went by and right in front of my ex-wife's house, where my son lives and her daughter lives." (See Suspicious Call Recording attached as Exhibit 3). The caller confirms later during the call that Vasquez was "fondling himself", and was "currently in the middle of Pace Bridge Road." *Id.*.

Trotter responded to Pace Bridge Road in Pickens County in reference to the suspicious person call at 8:39 a.m. (Trotter's Incident Report, Attached as Exhibit 4 and CAD Report attached as Exhibit 5). As Trotter was exiting his vehicle, Vasquez ran up to Trotter and swung his fist grazing Trotter's left shoulder. *Id*. Trotter states that Vasquez then took off running down Pace Bridge Road as Trotter pursued in his vehicle. *Id.*

Trotter pursued Vasquez and exited his vehicle to address Trotter a second time. *Id.* Trotter activated his body camera during the second encounter, and the body camera captured the

remainder of the incident. (Trotter Body Camera Video, Attached as Exhibit 6). The encounter is also captured on video by witness Brandon Turner. (See video by witness Turner, attached as Exhibit 7). Trotter exits his vehicle telling Trotter to "step up here" and Vasquez does not obey. (See Trotter Body Camera at 8:42:33). As Trotter gets closer to Vasquez, Vasquez strikes Trotter in the left shoulder/chest area. *Id.* at 8:43:40. Trotter communicates with dispatch to "step it up." *Id.* at 8:42:50. Following Vasquez's second assault, Trotter drew his taser and advised Vasquez that he was about to deploy the taser as Vasquez continued to masturbate and ignore commands. *Id.* at 8:43:01. Trotter then deploys the taser into Vasquez's lower back after Vasquez continued to disregard commands and masturbate. (See Body Camera Video, at 8:43:08).

Trotter commanded Vasquez to "put your hands behind your back" and "roll over" while Vasquez is on the ground. Vasquez continues to refuse to comply. *Id.* at 8:43:20. Trotter communicated with dispatch to "step it up" again and does not engage Vasquez for a brief period. Trotter then engaged Vasquez again and commanded him to put his hands behind his back and roll over. Vasquez again does not comply. *Id.* at 8:44:57. Trotter commands Vasquez to roll over yet again and Vasquez failed to comply. *Id.* at 8:46:38. Trotter is finally able to handcuff Vasquez when Officer McGaha arrives. *Id.* at 8:49:08. The last taser cycle was concluded at 8:46a.m. (See CEW Report attached as Exhibit 8). Dispatch notified Trotter that Vasquez was missing and autistic after he was handcuffed. (See Trotter Body Camera, at 8:53:50). No taser deployments occurred after Vasquez was handcuffed. (See Trotter Body Camera.)

Vasquez's sister initiated a missing person call at 8:48 a.m. (See CAD Report attached as Exhibit 9). She is heard explaining to dispatch that Vasquez "can't talk" and his autism was "severe". (See Missing Person Call attached as Exhibit 10). She also advised that her brother had been missing for more than 30 minutes. *Id.* Therefore, it is undisputed that the missing person

report was not made until after Trotter encountered Vasquez. Additionally, it is also undisputed that Vasquez's condition was not disclosed until after the second encounter was well underway. Vasquez was then taken to his residence and delivered to his family. He was not arrested. (See Trotter Body Camera Video #2, as Exhibit 11).

According to the Pickens County Sheriff's Office General Orders, "the Taser may be utilized when a subject presents an imminent physical threat to a Deputy, another person , or to his/her own self. Tasers are limited to use against subjects who are actively aggressive or actively resisting in a manner that in the Deputy's judgment is likely to result in injuries to a Deputy, other persons, or to themselves. (See, PCSO General Orders, GO-402, 12.1, as Exhibit 12). Furthermore, "a single application from the Taser with a full 5- second cycle will be used. If the subject is not compliant and is a continued threat, additional 5- second cycles will be used until the subject is no longer a threat and has been restrained. If the subject is still a continued threat and non-compliant after three (3) 5-second cycles, the Deputy/Officer should consider whether another form of less-lethal force should be used to obtain compliance. Policy does not limit the number of discharges, but suggests that if the desired effect is not achieved with three (3) cycles the Deputy/Officer should move to an alternative degree of force. In cases where a subject has been exposed to three (3) or more cycles exceeding 15 seconds, the Deputy/Officer will request EMS to evaluate the subject's condition and determine whether the subject should be transported to the hospital." (See PCSO General Orders, GO-402, 12.3, as Exhibit 12).

Plaintiff has not established any serious injury or physical condition as a result of the taser deployment. The still shot photographs produced by Plaintiff indicate two minimally invasive lacerations in Vasquez's lower back at the location of the prong placement and scrapes to his elbow and knee. (See Photos, as Exhibit 13). Plaintiff did not treat with a medical care provider the day

of the accident. Plaintiff first treated on August 31, 2021, at Baptist Easley Hospital where he was found to have "normal kidney function." On September 23, 2021, Vasquez treated at Children's Medical Center. He was present for recheck for protein in urine. No protein was found in his urine. He was encouraged to stay hydrated, get plenty of exercise. (See Plaintiff's Medical Records as Exhibit 14).

## LEGAL STANDARD

The legal standard governing expert testimony is Rule 702 of the Federal Rules of Evidence. On December 1, 2023, the rule was amended to provide a new preponderance of the evidence standard for expert opinions and to clarify the judicial gatekeeping role of the district court. A witness who is qualified as an expert by knowledge and skill experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702; *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2001). The amendments to Rule 702 emphasize the "special gatekeeping obligation on the trial judge" to "ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Nease v. Ford Motor Co.*, 848 F.3d 219, 229-30 (4th Cir. 2017) (quoting *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 597 (1993)).

An expert's opinion is relevant if it has "a valid scientific connection to the pertinent inquiry." *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019) (quoting *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786). This ensures that the expert "helps 'the trier of fact to understand the

evidence or to determine a fact in issue.' " *Nease*, 848 F.3d at 229 (citation omitted). Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded.

But even if relevant, an opinion must also be sufficiently reliable. Reliability is a "flexible" inquiry that focuses on "the principles and methodology" employed by the expert. *Daubert*, 509 U.S. at 594–95, 113 S.Ct. 2786. Specifically, district courts must ensure that an expert's opinion is "based on scientific, technical, or other specialized *knowledge* and not on belief or speculation." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). And to the extent an expert makes inferences based on the facts presented to him, the court must ensure that those inferences were "derived using scientific or other valid methods." *Id.* (quoting *Sardis v. Overhead Door Corp.,* 10 F.4th 268, 281 (4th Cir. 2021)). Where the admissibility of expert testimony is specifically questioned, the district court must make explicit findings, whether by written opinion or orally on the record, as to the challenged preconditions to admissibility. *Sardis v. Overhead Door Corp.*, 10 F.4th 268 (4th Cir. 2021)

In *Daubert,* the Court announced five factors that may be used in assessing the relevancy and reliability of expert testimony: (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community. *United States v. Crisp*, 324 F.3d 261, 265–66 (4th Cir. 2003).

**<u>ARGUMENT</u>**

Dr. Brown provides two opinions: (1) The force used by PCSO Sgt Trotter to detain Aaron Vaquez was excessive and objectively unreasonable; (2) PCSO Sgt Trotter's failure to recognize

Mr. Vasquez mental health crisis and tactical decision led to the excessive and objectively unreasonable force used to detain Aaron Vasquez. (See Dr. Brown's Report as Exhibit 15).

Dr. Brown's testimony should be excluded on several grounds. Dr. Brown improperly attempts to interpret and opine upon the "objectively reasonable" standard invading the province of both judge and jury. Dr. Brown fails to comply with Fed. R. Evid. Rule 26(a)(2)(B)(ii) in citing and sourcing the basis for his opinions leading to legal conclusions and false equivalencies. Dr. Brown's methodology is not accepted within his field and has not been peer reviewed. Instead, Dr. Brown relies heavily upon his "experience" and knowledge as a "policing scholar."[1] Dr. Brown is not qualified to opine regarding Vasquez's mental health crisis due to lack of training. (See Dr. Brown's Curriculum Vitae as Exhibit 16).

1. **<u>Dr. Brown's Opinion on Objective Reasonableness is an Improper Legal Opinion</u>**

For purposes of determining whether expert opinion testimony is admissible, the role of the district court is to distinguish opinion testimony that embraces an ultimate issue of fact from opinion testimony that states a legal conclusion. *United States v. Barile*, 286 F.3d 749 (4th Cir. 2002). Expert opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible. *United Prop. & Cas. Ins. v. Couture*, 639 F. Supp. 3d 590 (D.S.C. 2022). For example, Judge Shedd excluded a trucking company's expert's proffered testimony that the owner was "negligent" and that owner's conduct was "direct, proximate and efficient cause" of chemical explosion on the grounds that the testimony concerned applicable legal standards is improper and inadmissible. *Hermitage Indus. v. Schwerman Trucking Co.*, 814 F. Supp. 484, 486 (D.S.C. 1993).

---

[1] Dr. Brown's Curriculum Vitae confirms he is not published, has never been peer reviewed, and has no degree in any field that would qualify him as a "policing scholar". (See Dr. Brown's Curriculum Vitae as Exhibit 1).

Within the use of force context, a United States District Court has barred a plaintiff's use for force expert from providing legal conclusions about what was "proper", "unjustified", "unreasonable", or "excessive" regarding the use of force used during the arrest of the plaintiff. *Trexler v. City of Belvidere*, No. 3:20-CV-50113, 2023 WL 415184, at *4 (N.D. Ill. Jan. 25, 2023). That Court also barred the expert from referencing or applying the standards set forth in *Graham v. Connor* because any opinion or application of the standards are legal conclusions on a determinative issue. *Id.* The Court reasoned: "Legal conclusions are also inadmissible because they are not helpful to the jury. *Thompson*, 472 F.3d at 458. Here, jurors can simply watch the dash-camera video, apply their own understanding of reasonableness and determine if it was reasonable. *Id.*

Dr. Brown testified that he applied the "objectively reasonable" standard from *Graham v. Connor* to his interpretation of the facts of this case. (See Dr. Brown's Depo, p. 74:3-p.75:20, entire deposition attached as Exhibit 17). He admitted that he was providing an opinion on a term specifically defined by caselaw. *Id.* He applied the "objectively reasonable" definition from *Graham v. Connor* to various other vague, poorly defined terms including Trotter's purported "transitioning levels of force" and "excessive" deployment of the taser. (See Dr. Brown's Depo, p. 76:4-18 and p. 81:25-p. 83:5). [2]

The "objectively reasonable" standard is applied to all of Dr. Brown's opinions. He uses it to instruct the jury on the law and tells the jury how they should apply the law to the facts. The precedent cited is clear that these legal conclusions should not be allowed into evidence. His conclusion that Trotter was objectively unreasonable relies upon an improper analysis and application of a legal term, as well as a reliance on unreliable *ipse dixit* reasoning that ignores the

---

[2] Dr. Brown is unable to cite any literature, sources or references to define these terms.

evidence. Therefore, Dr. Brown's testimony and opinions regarding the objective reasonableness of Trotter's use of force should be excluded.

2. **Dr. Brown Does Not Satisfy the Reliability Requirement**

The expert report must contain a complete statement of all opinions the witness will express and the basis and reasons for them, and the facts or data considered by the witness in forming them. Fed. R. Civ. P. 26. The refocus of disclosure on "facts or data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. At the same time, the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert. Fed. R. Civ. P. 26, Advisory Committee Notes, 2010. Federal Rule of Civil Procedure 37(c) states, in relevant part, that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Erickson v. City of Lakewood*, No. 19-CV-02613-PAB-NYW, 2021 WL 4438035, at *4 (D. Colo. Sept. 27, 2021).

Of particular relevance to an expert proffered for his experience, the court notes that neither *Daubert* nor its progeny preclude experience-based testimony." *Butler v. First Acceptance Ins. Co.*, 652 F. Supp. 2d 1264, 1272 (N.D. Ga. Aug. 17, 2009) (quoting *Kumbo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999)). However, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only the *ipse dixit* of the expert," and the "court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136,

146 (1997). "When an expert relies primarily on experience, the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Butler*, 652 F. Supp. 2d at 1272 (quoting *Frazier*, 387 F.3d at 1261). This is because "[a]n expert's qualification and experience alone are not sufficient to render his opinions reliable," and expert testimony does nothing more than what lawyers can argue in closing does not help the trier of fact. *Id*; (quoting *Sapp v. Marcum*, No. 6:21-CV-1515-PGB-DCI, 2023 WL 3965718, at *2 (M.D. Fla. June 13, 2023).

Dr. Brown's report and deposition testimony is devoid of any specific citations to literature, industry standards, sources for his definitions of terms and application of the facts for his conclusions. (See Dr. Brown's Report, attached as Exhibit 15). His lack of any specific citations falls well below the standard set forth in Federal Court Rules and caselaw. By comparison, Trotter's expert Michael Brave's report contains voluminous citations. (See Michael Brave Report, attached as Exhibit 18).

Dr. Brown was unable to cure his violations of Rule 26 through his deposition testimony despite being given multiple opportunities.[3] He fails to cite to any literature or source for his definition of "generally accepted principles. (See Dr. Brown's Depo, p. 69:24-p.71:19). He fails to cite and literature or source to define "exigency." *Id.* at p. 88:15-17. He is not able to provide citations for his definition of "rapidly evolving" and "neuromuscular incapacitation." *Id.* at p.89:1-14, and p.90:6-23. He is not able support his position that a law enforcement officer may attempt to handcuff a person resisting or attempting to resist while deploying a taser. *Id.* at p. 64:8-11. He

---

[3] The undersigned counsel submits it would be cumbersome to identify each and every aspect of his report and opinion for which he could not cite to any specific source. A thorough reading of Dr. Brown's deposition reveals the nature and scope of his failure to meet the applicable standard.

includes conclusory statements and *ipse dixit* opinions regarding training officers receive to recognize signs of 'distress in crisis' or how law enforcement officers are training to recognize signs of mental health issues. *Id.* at 80:1-83:24).

Dr. Brown characterized his opinion as, "based upon my personal experience, but just based upon my experience, my training, along with my current, other things I do." (See Dr. Brown's Depo, p. 49:12-19). Dr. Brown admitted his methodology drew from his experience and "things I know." *Id.* at p.73:22-p.74:2). Despite his own admission that he drew from his experience, he has no training in autism and did not perform any research into autism to explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts:

```
11  Q.  Do you have any specialized training in Autism?
12  A.  No, sir.
13  Q.  Do you have any training in what characteristics, factors
14      or symptoms you look at when encountering somebody to
15      determine if they are autistic?
16  A.  No, sir.
17  Q.  In preparing your report for this case, did you do any
18      research into the symptoms, characteristics or behavior of
19      someone with autism?
20  A.  No, sir.
21  Q.  During your career as a Police Officer and up to the
22      current, up to today's date, have you received any
23      specific training on encountering someone with Autism in
24      the context of Law Enforcement?
25  A.  Not Autism specifically, no, sir.  (Id. at p. 38:11 to 38:25.)
```

Dr. Brown has been offering expert services for a little over a year. *Id.* at p.12:14-16. The deposition taken by the undersigned counsel in this case was the first expert deposition he has given as an expert witness. *Id.* at p.6:15-16. Dr. Brown's education consists of a Bachelor of Arts in Political Science from Hampton University, a Master of Science Criminal Justice from Charleston Southern University, and a Doctorate in Organizational Leadership from Grand

Canyon University. (See Dr. Brown's Curriculum Vitae). He testified that none of his degrees involved a curriculum with classes on use of force or use of electronic weapons/tasers. (See Dr. Brown's Deposition, at p. 24:24-25:21). While he teaches classes at the Federal Law Enforcement Training Center regarding taser use, the classes are focused on teaching law enforcement officers how to use the taser. *Id.* at p.29:10-p.30:9. Dr. Brown is not published in use of force or taser use by law enforcement. *Id.* at p.13:20-24. Dr. Brown has no work that has been peer reviewed. *Id.* at p.34:19-22. Dr. Brown has never been qualified as an expert in Federal Court. *Id.* at p. 23:11-16).

Dr. Brown's report is defective and falls below the standard due to his lack of citations to facts, data or sources he relied upon to form his opinion. Furthermore, his experience is an insufficient basis for his opinion because he does not explain specifically how the experience relates to his two opinions.

## **Conclusion**

Trotter (with all Defendants' joining) respectfully requests Dr. Brown's report and testimony should be excluded in he following particulars: (1) no opinion as to the objective reasonableness (or unreasonableness) regarding alleged excessive use of force because it is a legal conclusion/opinion; (2) no opinion as to Vasquez's mental health crisis or Trotter's failure to recognize Vasquez's mental health crisis due to lack of qualification; (3) no opinion as to the testimony training officers receive in general to recognize signs of 'distress in crisis' or how law enforcement officers are training to recognize signs of mental health issues; (4) no opinion as to objectively unreasonable use of taser due to improper legal opinion and lack of training on taser specifically. For the reasons set forth herein, Trotter respectfully requests that this Court exercise

its gatekeeping function to strike and exclude the testimony of Dr. Brown, an grant any further relief which this Court deems appropriate.

Attorney for Defendant James William Trotter

s/ *Chad M. Graham*

_____
Chad M. Graham (Federal Bar #: 11569)
233 South Pine Street
P. O. Box 5663
Spartanburg, South Carolina 29304
(864) 582-3536
cgraham@wardfirm.com


Attorney for Defendants Pickens County, Pickens County Sheriff's Department, Rick Clark, Pickens County Sheriff, Matt McGaha, Chief Deputy Chuck James and Lieutenant Tommy Blankenship


s/ *Patrick L. Still, III*

_____
Patrick L. Still, III (Federal Bar #: 9857)
200 E. Broad Street, Suite 450
Greenville, SC 29601
(864) 331-8940
tstill@clawsonandstaubes.com

December 20, 2023